IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Trissa Basey, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **COMPLAINT** |
| ) | **Jury Trial Demanded** |
| JD E-Z Auto Sales, LLC d/b/a ) | |
| Automaxx of the Carolinas, ) | |
| ) | |
| ) | |
| Defendant. ) | |

COMES NOW the Plaintiff Trissa Basey and files this Complaint and would respectfully show unto this Court as follows:

**NATURE OF THE ACTION**

1. In this action, the Plaintiff herein seeks to recover damages for the violation of federal anti-discrimination laws, Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e *et seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), on the basis of gender/sex (female), and pregnancy. The PDA states that, "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment related purposes … as other persons not so affected but similar in their ability or inability to work…" 42 U.S.C. §§2000e-2(a)(1), 2000e(k). Plaintiff further seeks to enjoin the Defendant from further violating these Acts. Plaintiff also seeks herein to recover damages for wrongful termination in violation of the public policy of South Carolina, as articulated in S.C. Code Ann. § 16-17-560.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. Venue is proper in the District of South Carolina pursuant to 28 U.S.C. § 1391 and in the Charleston Division pursuant to D.S.C. Local Civil Rule 3.01(A)(1), because a substantial part of the events or omissions giving rise to the claims occurred in this State and Division, and the Defendants do business relating to the events or omissions alleged herein within this State and Division.

3. All the discriminatory employment practices alleged herein were committed within the State of South Carolina and in the Charleston Division.

**PARTIES**

4. Plaintiff is a citizen and resident of Charleston County, South Carolina.

5. Defendant JD E-Z Auto Sales, LLC, d/b/a Automaxx of the Carolinas (hereinafter "Automaxx") is limited liability company, incorporated under the laws of the State of South Carolina, doing business in the State of South Carolina, and with its principal place of business at 1016 N. Main Street, Summerville, South Carolina 29483.

6. The Defendant is a "person" within the meaning of §701, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

7. The Defendant is an industry that affects commerce within the meaning of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

8. The Defendant employs fifteen (15) or more employees and is an "employer" within the meaning of §701, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

**CONDITIONS PRECEDENT**

9. All conditions precedent to jurisdiction under §706 of Title VII, 42 U.S.C. §2000e-5 have occurred or been complied with.

   a. A charge of employment discrimination on basis of gender/sex (female) discrimination was timely filed by the Plaintiff with the South Carolina Human Affairs Commission ("SHAC") and Equal Employment Opportunity Commission ("EEOC").

   b. On February 8, 2023, the EEOC issued its Dismissal and Notice of the Right to Sue. Said Notice was received by Plaintiff's counsel from the EEOC on or about February 8, 2023 and by Plaintiff on or about February 13, 2023.

   c. This Complaint has been filed within 90 days of receipt of EEOC's Dismissal and Notice of the Right to Sue.

**FACTS**

10. The Plaintiff began her employment with the Defendant in September of 2018. The Plaintiff was employed by the Defendant Automaxx continuously until her termination on January 13, 2022.

11. Plaintiff's employment history and job performance with the Defendant was exemplary, earning the top Business Development Center ("BDC") agent award two years in a row, with a highly successful sales record. Plaintiff met, and exceeded, her employer's sales record expectations year after year, earning performance bonuses every year that she worked for Automaxx. Plaintiff even set a monthly record of fifty-eight vehicles sold in a month, which, upon information and belief, still remains the record for monthly vehicle sales at Automaxx.

12. Plaintiff's exemplary job performance was awarded with a promotion to an assistant manager's position in June of 2021.

13. After her promotion, plaintiff was supervised by Jennifer Reynoso, the Manager of the BDC and a close personal friend of the Plaintiff.

14. On or around December 24, 2021, Plaintiff learned that she was pregnant while visiting with Ms. Reynoso at her home. The Defendant Automaxx's actual and constructive knowledge of Plaintiff's pregnancy expanded when Plaintiff notified Mike Dangerfield, Internet Sales Manager, that she was pregnant several days after December 24, 2021.  Upon information and belief, Mike Dangerfield informed his father John Dangerfield of Plaintiff's pregnancy shortly thereafter.  John Dangerfield is the owner of Automaxx.

15. On January 4, 2022, Plaintiff met with John Dangerfield and Jennifer Reynoso for her annual performance review. During this meeting, Mr. Dangerfield communicated to Plaintiff that the BDC was doing well and that he was impressed with the BDC's sales numbers. Mr. Dangerfield also reiterated what Automaxx's expectations were for Plaintiff in a management position. During this meeting, Plaintiff informed Mr. Dangerfield of her decision to terminate her pregnancy with an abortion, primarily for professional reasons. She also discussed her mental health issues with him during this meeting. In reply, Mr. Dangerfield told Plaintiff that she did not owe anyone an explanation for her decision to terminate her pregnancy and that Plaintiff should not terminate her pregnancy on his account, stating "that's not on me."

16. After this meeting on January 4, 2022, Plaintiff continued to meet Automaxx's performance and management expectations, immediately implementing the changes to her management style that had been discussed by Mr. Dangerfield in the prior meeting.

17. On or about January 10, 2022, while having a conversation with another co-worker who Plaintiff also considered a close friend, Jenna Howell, Ms. Howell informed Plaintiff that she was aware that the Plaintiff was pregnant. Ms. Howell had previously disclosed to Plaintiff that she and her husband had had difficulty conceiving a child and had confided numerous other details about her personal life, including details about her personal life, her family, her intimate relationship with her husband, and her medical conditions. Plaintiff confirmed to Ms. Howell during this conversation that she was indeed pregnant, having not told Ms. Howell before this time due to her sensitivity to Ms. Howell's difficulty in conceiving. Not wanting Ms. Howell to learn of her decision to terminate her pregnancy from others, the Plaintiff then informed her of her decision to terminate her pregnancy and provided the personal reasons for her decision. Ms. Howell expressed her condolences for Plaintiff's difficult decision. Plaintiff and Ms. Howell ended the conversation seemingly amicably.

18. Upon information and belief, after this conversation with Plaintiff, Ms. Howell almost immediately thereafter called her husband, Wesley Howell, also an employee at Automaxx, and informed him of Plaintiff's decision to terminate her pregnancy. Upon information and belief, Ms. Howell thereafter called Ms. Reynoso, very upset and complaining about Plaintiff's decision to terminate her pregnancy. Upon information and belief, Mr. Howell approached Mike Dangerfield and complained to him about Plaintiff and her decision to terminate her pregnancy. Upon information and belief, Mr. Howell demanded Mike Dangerfield take action: "[y]ou guys need to do something" about Plaintiff.

19. Upon learning of this conduct by the Howells, Plaintiff texted Ms. Reynoso and asked her if she would be losing her job due this incident. Mike Dangerfield then conveyed to

Ms. Reynoso that she should inform Plaintiff that she would not be losing her job, but that Plaintiff should come in to discuss the matter on Thursday, January 13, 2021.

20. On January 10, Plaintiff met with Mike Dangerfield and Ms. Reynoso and was informed at that time that she was being suspended for disclosing her decision to terminate the pregnancy. Mike Dangerfield expressed at this meeting that he was "disappointed" that Plaintiff has disclosed her decision to terminate her pregnancy to Ms. Howell, despite the fact that Ms. Howell had shared a great deal more personal information with Plaintiff over the years. They also informed Plaintiff that any decisions regarding her employment would be made by John Dangerfield as the owner of Automaxx.

21. On January 13, 2022, Plaintiff met with John Dangerfield, who told her that her employment with Automaxx was being terminated. At this meeting, Mr. Dangerfield told Plaintiff that she was being terminated because she had been previously instructed by him not to disclose her decision to terminate her pregnancy. In reality, Mr. Dangerfield had not given Plaintiff any such previous instruction to not disclose her decision. Rather, Mr. Dangerfield had merely told Plaintiff previously that she did not owe any other employees an explanation and that her decision to terminate her pregnancy was "not on me."

22. The reason given for Plaintiff's termination was untrue and pretextual in nature, designed to conceal the true and discriminatory reason for Plaintiff's termination. Plaintiff's employment with Automaxx was terminated because of her sex (female) and because of stated intention to exercise her protected right to terminate her pregnancy.

23. Other employees, including Ms. Howell, who were not pregnant at the time nor contemplating aborting their pregnancies, were treated more favorably than the Plaintiff and were not disciplined nor terminated for discussing their personal lives. Plaintiff, a pregnant

employee who had expressed her intention to terminate her pregnancy, was treated less favorably than these employees and was terminated from her employment.

24. Upon information and belief, the Defendant replaced the Plaintiff hired an individual outside of Plaintiff's protected class.

25. The acts and omissions of the Defendant set out in this complaint were willful, wanton, reckless, malicious, and occurred in bad faith, and have proximately caused damages, both actual and exemplary to the Plaintiff.

## FOR A FIRST CAUSE OF ACTION
### Title VII Sex Discrimination and the Pregnancy Discrimination Act of 1978

26. The Plaintiff incorporates all preceding and subsequent paragraphs of this Complaint.

27. The Plaintiff is/was, at all times relevant herein, a member of a protected group on the basis of her sex/gender and protected status (pregnancy).

28. The Plaintiff was discriminated against due to her sex and gender (female) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and in violation of the Pregnancy Discrimination Act of 1978. The Plaintiff was terminated and discriminated against based upon her stated decision to exercise her right to have an abortion to terminate her pregnancy.

29. Plaintiff was performing her job duties at a level that met and even exceeded her employer's legitimate expectations at the time of her termination.

30. Plaintiff has properly exhausted her administrative remedies, and she has commenced this action within ninety (90) days of her receipt of the EEOC's right to sue letter.

31. The Pregnancy Discrimination Act makes clear that Title VII's prohibition against sex discrimination "because of sex" or "on the basis of sex" includes, but is not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. 42 U.S.C. 2000e(k).

32. The EEOC guidelines interpreting the Pregnancy Discrimination Act, which are given a high level of deference by the courts, *see Griggs v. Duke Power,* 401 U.S. 424, 433-34, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971), expressly state that an abortion is covered by Title VII:

> The basic principle of the [PDA] is that women affected by pregnancy and related conditions must be treated the same as other applicants and employees on the basis of their ability or inability to work. A woman is therefore protected against such practices as being fired … merely because she is pregnant or has had an abortion.

Appendix 29 C.F.R. pt. 1604 App. (1986). *See also Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 364 (3d Cir. 2008), *cert. denied*, 129 S. Ct. 576 (2008) (PDA prohibits employer from discriminating against female employee because she has exercised her right to have an abortion). Moreover, the PDA's protection extends to female employees who have expressed their intention to have an abortion. *See Turic v. Holland Hospitality, Inc*., 85 F.3d 1211, 1214 (6th Cir. 1996) (discharge of pregnant employee because she contemplated having abortion violated PDA).

33. The Defendant took adverse employment actions against the Plaintiff in violation of 42 U.S.C. §§ 2000e, *et seq.,* and thereby proximately caused damages, both actual and punitive, to the Plaintiff.

34. Further, the Defendant has knowingly allowed the Plaintiff to be subjected to sex discrimination in the workplace in violation of 42 U.S.C. §§ 2000e, *et seq.*, and thereby proximately caused damages, both actual and punitive, to the Plaintiff.

35. The Defendant acted intentionally, willfully, and in blatant disregard for the rights of Plaintiff. The actions and inactions of the Defendant have caused, and continue to cause the Plaintiff severe emotional and mental distress, embarrassment, humiliation, pain and suffering, loss of enjoyment of life, and other non-pecuniary losses.

36. Due to the Defendant's conduct, the Plaintiff is also entitled to an injunction prohibiting the unlawful discriminatory practices of the Defendant, and all such other relief as this Court deems allowable under law or equity, including her costs and attorneys' fees.

**FOR A SECOND CAUSE OF ACTION**
**Public Policy – Wrongful Discharge**

37. The Plaintiff incorporates all preceding and subsequent paragraphs of this Complaint.

38. By its actions, the Defendant has wrongfully terminated the Plaintiff's at-will employment in retaliation for Plaintiff's exercise of her protected right to obtain an abortion in violation of Section 16-17-560, S.C. Code of Laws (1976), and in violation of the clear mandate of public policy of the State of South Carolina.

39. In violation of the clear mandate of the public policy of South Carolina, Defendant terminated Plaintiff's employment in retaliation for Plaintiff's political beliefs in violation of Section 16-17-560, S.C. Code of Laws (1976) and for Plaintiff's exercise of her constitutionally guaranteed right to decide to have an abortion. *See Planned Parenthood S. Atl. v. State*, 882 S.E.2d 770 (2023) (South Carolina Supreme Court recognizing that South Carolina's

constitutional right to privacy outlined in S.C. Const. art. I, § 10 extends to a woman's decision to have an abortion).

40. The afore-referenced acts and omissions of the Defendant have caused the Plaintiff severe emotional and mental distress, embarrassment, humiliation, pain and suffering, loss of enjoyment of life and other damages, both actual and exemplary.

## DEMAND FOR JURY TRIAL

41. Plaintiff demands a trial by jury of all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a. exercise jurisdiction over the parties and subject matter of this action;

b. set this case down for trial by jury on all issues so triable;

c. enter temporary, preliminary, and permanent injunctions which enjoin the Defendants from further violating Title VII and the Pregnancy Discrimination Act;

d. award Plaintiff all relief available under the claims pled herein, including compensatory damages, actual and exemplary damages, punitive damages, pre-judgment interest; and attorney's fees and costs; and

e. grant such other and further relief as is deemed just and proper.

GIBBS & HOLMES

s/ Rebecca J. Wolfe

Allan R. Holmes (Fed. ID 1925)
Cheryl H. Ledbetter (Fed. ID 11446)
Rebecca J. Wolfe (Fed. ID 12634)
171 Church Street, Suite 110
Charleston, South Carolina 29401
Telephone: 843-722-0033

**ATTORNEYS FOR PLAINTIFF**

April 10, 2023
Charleston, South Carolina